FILED - USDC -NH
2025 JAN 31 PM4:01

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No. 1:25-cr-8-PB-TSM-01 |
| | ) |
| YOLANDA DUPONT | ) |
| _____ | ) |

## INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

### General Allegations

At all times material to this Information, unless otherwise specified:

### The Medicare Program

1. The Medicare Program ("Medicare") was a federal health care program providing benefits to individuals who were sixty-five years of age or older, blind, or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS"). Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

2. Medicare was subdivided into multiple parts. Medicare Part B covered, among other things, items and services supplied and provided by physicians, medical clinics, and durable medical equipment ("DME") suppliers, including office visits, minor surgical procedures, and DME, that were medically necessary and ordered by licensed medical doctors or other qualified health care providers.

3. Orthotic devices were a type of DME that included rigid and semi-rigid devices such as shoulder braces, knee braces, back braces, and wrist braces (collectively "orthotics" or

1

"braces").

4.     Individuals who qualified for Medicare benefits were commonly referred to as Medicare "beneficiaries." Each beneficiary was given a unique Medicare beneficiary identification ("MBI") number.

5.     DME companies, physicians, and other health care providers that provided services to Medicare beneficiaries were referred to as Medicare "providers." To participate in Medicare, providers were required to submit an application in which the providers agreed to comply with all Medicare-related laws and regulations. If Medicare approved a provider's application, Medicare assigned the provider a unique Medicare "provider number." A health care provider with a Medicare provider number could file true and accurate claims with Medicare to obtain reimbursement for medically necessary services rendered to beneficiaries.

6.     Enrolled providers agreed to abide by the policies, procedures, rules, and regulations governing reimbursement. To receive Medicare funds, enrolled providers were required to abide by the Federal Anti-Kickback Statute and other laws and regulations. Providers were given online access to Medicare manuals and services bulletins describing billing procedures, rules, and regulations.

7.     Medicare reimbursed DME companies and other providers for services rendered to beneficiaries. To receive payment from Medicare, providers submitted or caused the submission of claims to Medicare, either directly or through a billing company.

8.     To bill Medicare for services rendered, a provider submitted a claim form ("Form 1500"). When a Form 1500 was submitted, usually in electronic form, the provider certified that (1) the contents of the form were true, correct, and complete; (2) the form was prepared in compliance with the laws and regulations governing Medicare; and (3) the contents of the claim

were medically necessary.

9. A Medicare claim for DME reimbursement was required to set forth, among other things, the beneficiary's name and unique MBI number, the equipment provided to the beneficiary, the date the equipment was provided, the cost of the equipment, and the name and unique physician identification number of the physician who prescribed or ordered the equipment.

10. A claim for DME submitted to Medicare qualified for reimbursement only if it was medically necessary to the treatment of the beneficiary's illness or injury and prescribed by a physician who has conducted a needs assessment, evaluated, and/or treated the beneficiary.

## The Defendant and Related Companies

11. Allstar Medical Supply Corp. ("Allstar") was a DME company located in, and doing business in the District of New Hampshire. Allstar maintained a bank account ending in x9409 at Bank 1, located in the District of New Hampshire.

12. Company 1 was a purported DME management company located in Middle District of Florida. Company 1 was owned and operated by Individual A, a resident of the Middle District of Florida.

13. Defendant YOLANDA DUPONT, was a resident of the Middle District of Florida.

14. Although not listed on Allstar's documents filed with the New Hampshire Secretary of State or Medicare, Individual A and other co-conspirators were the true owners and operators of Allstar.

## COUNT ONE
### Conspiracy to Commit Health Care Fraud
### (18 U.S.C. § 1349)

15.     The allegations in paragraphs 1 through 14 of this Information are realleged and incorporated by reference as though fully set forth herein.

16.     From in or around February 2024, and continuing through in or around May 2024, in the District of New Hampshire, and elsewhere, the defendant,

YOLANDA DUPONT,

did knowingly and willfully, that is, with the intent to further the objects of the conspiracy, combine, conspire, confederate, and agree with others, known and unknown to the United States Attorney, to knowingly and willfully execute a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

### Purpose of the Conspiracy

17.     It was a purpose of the conspiracy for the defendant, YOLANDA DUPONT, and her co-conspirators to unlawfully enrich themselves and others by, among other things: (1) submitting and causing the submission of false and fraudulent claims for health care benefits to Medicare; (2) concealing and causing the concealment of false and fraudulent claims to Medicare; and (3) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

## **Manner and Means of the Conspiracy**

The manner and means by which the defendant, YOLANDA DUPONT, and her co-conspirators sought to accomplish the purpose and object of the scheme included, among other things, the following:

18. Individual A and co-conspirators recruited and installed YOLANDA DUPONT to serve as a nominee owner for Allstar to conceal the identities of Individual A and others as Allstar's true beneficial owners.

19. YOLANDA DUPONT agreed to purchase Allstar on behalf of Individual A, Company 1, and others. Individual A provided YOLANDA DUPONT with funds to purchase Allstar.

20. YOLANDA DUPONT signed relevant documents on behalf of Allstar, including as the authorized official on a Medicare enrollment form, as the sole authorized signer on the signature card for account x9409 at Bank 1, and as president, director and chairman of the board of directors on corporate documents filed with the New Hampshire Secretary of State.

21. YOLANDA DUPONT, Individual A, and others, provided, and caused the provision of, DME to beneficiaries that was medically unnecessary, and that the beneficiaries did not often want or need.

22. Between in or around March 2024, and continuing through in or around May 2024, YOLANDA DUPONT and her conspirators caused Allstar to submit to Medicare approximately $3,356,723.60 in false and fraudulent claims for DME that were medically unnecessary, ineligible for reimbursement, and were otherwise not provided as represented. Medicare paid Allstar approximately $1,642,365.68 on those claims.

## ACTS IN FURTHERANCE OF THE CONSPIRACY

23. From in or about February 2024 through and in or about May 2024, YOLANDA DUPONT and co-conspirators known and unknown to the United States committed and caused to be committed the following acts, among others, in furtherance of the conspiracy:

   a. On or about March 5, 2024, YOLANDA DUPONT attended the real estate closing in the District of New Hampshire for the purchase of Allstar;

   b. On or about March 5, 2024, YOLANDA DUPONT went to Bank 1 in the District of New Hampshire and completed paperwork making her a signatory on the Allstar account ending in x9409;

All in violation of Title 18, United States Code, Section 1349.

## NOTICE OF FORFEITURE

Upon conviction of the offense charged in Count One, the defendant shall forfeit, pursuant to 18 USC § 981(a)(1)(c) and 28 USC § 2461(c), all property, real or personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to the offense including, but not limited to: $1,515,665.85 in U.S. Currency, seized from Meredith Village Savings Bank acct. #4200089409, in the name of Allstar Medical Supply Corp.

JOHN J. MCCORMACK
Acting United States Attorney

Date: 1/31/25

By: _____
Geoffrey Ward
Assistant United States Attorney